IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

**DARREN EDWARDS, #R3712**                                                **PLAINTIFF**

**VS.**                                                **CIVIL ACTION NO. 2:09cv133-MTP**

**JENNIFER JONES, ET AL.**                                                **DEFENDANTS**

### OPINION AND ORDER

THIS MATTER is before the court on the Motion for Summary Judgment [29] filed by Defendants Regina Hancock, Jennifer Jones, Don Lewis, and Isom O'Bonner.[1] Having reviewed the submissions of the parties and the applicable law, the court finds that the Defendants' Motion for Summary Judgment [29] should be granted.

### FACTUAL BACKGROUND

Plaintiff Darren Edwards, proceeding *pro se* and *in forma pauperis*, filed his Complaint [1] pursuant to 42 U.S.C. § 1983 on June 21, 2009. Through his complaint, and as clarified during his *Spears*[2] hearing, Plaintiff alleges a claim against Defendant Jennifer Jones for the denial and/or delay of adequate medical treatment; a claim against Defendant Don Lewis for retaliation and cruel and unusual punishment; a claim against Defendant Isom O'Bonner for cruel and unusual punishment; and claims against Defendant Regina Hancock for cruel and unusual punishment and failure to train and/or supervise. *See* Scheduling and Case Management Order [23]. The matters alleged in Plaintiff's complaint occurred while he was a post-conviction

---

[1] Incorrectly identified in the complaint as Isom Obannon.

[2] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985). Plaintiff's *Spears* hearing took place on February 23, 2010.

1

inmate at the South Mississippi Correctional Institution ("SMCI").  Plaintiff is currently incarcerated at the East Mississippi Correctional Facility ("EMCF") serving a twelve-year sentence after having been convicted of aggravated assault in Grenada County and possession of marijuana in Lee County.  Plaintiff's tentative release date is February 10, 2013.[3]

## STANDARD FOR SUMMARY JUDGMENT

This court may grant summary judgment only if, viewing the facts in a light most favorable to the Plaintiff, the Defendants demonstrate that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law.  *Woods v. Smith,* 60 F.3d 1161, 1164 (5th Cir. 1995).  If the Defendants fail to discharge the burden of showing the absence of a genuine issue concerning any material fact, summary judgment must be denied.  *John v. Louisiana,* 757 F.2d 698, 708 (5th Cir. 1985).  The existence of an issue of material fact is a question of law that this court must decide, and in making that decision, it must "draw inferences most favorable to the party opposing the motion, and take care that no party will be improperly deprived of a trial of disputed factual issues."  *John*, 757 F.2d at 708, 712.

There must, however, be adequate proof in the record showing a real controversy regarding material facts.  "Conclusory allegations," *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 902 (1990), unsubstantiated assertions, *Hopper v. Frank*, 16 F.3d 92, 96-97 (5th Cir. 1994), or the presence of a "scintilla of evidence," *Davis v. Chevron U.S.A.*, *Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994), is not enough to create a real controversy regarding material facts.  In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary

---

[3]*See* http://www.mdoc.state.ms.us/InmateDetails.asp?PassedId=R3712 (last visited 10/6/10).

facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (emphasis omitted).

## ANALYSIS

Plaintiff's claims are before the court pursuant to 42 U.S.C. § 1983. However, Section 1983 "neither provides a general remedy for the alleged torts of state officials nor opens the federal courthouse doors to relieve the complaints of all who suffer injury at the hands of the state or its officers." *White v. Thomas*, 660 F.2d 680, 683 (5th Cir.1981). Rather, "[i]t affords a remedy only to those who suffer, as a result of state action, deprivation of 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *White*, 660 F.2d at 683 (quoting 42 U.S.C. § 1983).

It is well-settled that Section 1983 does not "create supervisory or *respondeat superior* liability." *Oliver v. Scott,* 276 F.3d 736, 742 & n.6 (5th Cir. 2002); *see also Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987) (citations omitted) ("Under § 1983, supervisory officials cannot be held liable for the actions of subordinates under any theory of vicarious liability."). "To state a cause of action under § 1983, the plaintiff must allege facts reflecting the defendants' participation in the alleged wrong, specifying the personal involvement of each defendant." *Jolly v. Klein*, 923 F. Supp. 931, 943 (S.D. Tex. 1996) (citing *Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992)). Thus, supervisory prison officials may be held liable for a Section 1983 violation only if they either were personally involved in the constitutional deprivation or if there is a "sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Thompkins*, 828 F.2d at 304; *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009) ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own

individual actions, has violated the Constitution.").

Moreover, "[f]or purposes of liability, a suit against a public official in his official capacity is in effect a suit against the local government entity he represents." *Mairena v. Foti*, 816 F.2d 1061, 1064 (5th Cir. 1987) (citations omitted). The Supreme Court has held that in order for a local governmental entity to have liability under Section 1983, a plaintiff must prove that a policy, custom or practice of that local government entity was the "moving force" behind the constitutional violation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

### Denial of Adequate Medical Care

Plaintiff alleges a claim against Defendant Jennifer Jones, a correctional officer at SMCI, for the denial and/or delay of adequate medical treatment in violation of the Eighth Amendment. Specifically, he claims that he fell and broke his ankle on October 29, 2008. He went to the infirmary, but Officer Jones allegedly made him leave and told every other officer he asked for help to make him fill out a sick call request, despite the fact that he needed emergency care. Officer Jones allegedly told him that if he didn't leave the infirmary, she would issue him a rule violation report. He claims she showed an "indifferent and hostile" attitude towards his serious medical needs. He claims he received medical care two or three days later. As a result of the foregoing, Plaintiff claims Officer Jones deliberately denied, delayed and/or interfered with his adequate medical treatment after he broke his ankle and needed emergency care.

"Prison officials violate the constitutional proscription against cruel and unusual punishment when they are deliberately indifferent to a prisoner's serious medical needs, as doing so constitutes unnecessary and wanton infliction of pain." *Davidson v. Texas Dep't of Criminal Justice*, 91 Fed. App'x 963, 964 (5th Cir. 2004) (citing *Wilson v. Seiter*, 501 U.S. 294, 297

(1991)). Deliberate indifference "is an extremely high standard to meet." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quoting *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)). The test for establishing deliberate indifference is "one of subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

A prison official may not be held liable under this standard pursuant to Section 1983 unless the plaintiff alleges facts which, if true, would establish that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 838. Plaintiff must "submit evidence that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any other similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Davidson*, 91 F. App'x at 965 (quoting *Domino*, 239 F.3d at 756). "[D]elay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, which results in substantial harm." *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

Negligent conduct by prison officials does not rise to the level of a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 333-34 (1986). The Plaintiff is not entitled to the "best" medical treatment available. *McMahon v. Beard*, 583 F.2d 172, 174 (5th Cir. 1978); *Irby v. Cole*, No. 4:03cv141-WHB-JCS, 2006 WL 2827551, at *7 (S.D. Miss. Sept. 25, 2006). Further, a prisoner's "disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs." *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 2001).

In their Motion [29] and Supporting Memorandum [33], Defendants argue that Plaintiff

has failed to establish that Officer Jones was deliberately indifferent to his serious medical needs, and thus, she is entitled to judgment as a matter of law. In support of their Motion [29], Defendants submitted a portion of the Plaintiff's medical records, and the declaration of Officer Jones. *See* Exs. A and D to Motion [29].

The record reflects that Plaintiff was seen in the infirmary on October 29, 2008, the day he injured his ankle. The nurse noted Plaintiff's ankle was extremely swollen and he was given crutches for mobility and ibuprofen for pain and referred to a physician. Plaintiff was seen on October 31, 2008, by Dr. McCleave. An x-ray revealed that Plaintiff's ankle was fractured and Dr. McCleave recommended he be referred to Forrest General Hospital for an orthopaedic evaluation. After his examination by Dr. McCleave, Plaintiff was taken to the emergency room and evaluated by an orthopaedic physician on October 31, 2008. *See* Ex. D to Motion [29] at 2-4; Ex. B to Pl's Response [36-2] at 6-7, 10.

On November 3, 2010, Plaintiff was prescribed ibuprofen and a wheelchair until his follow-up with the orthopaedic surgeon, and was prescribed Vicodin on November 5, 2010. *See* Ex. D to Motion [29] at 2-4. On November 5, 2010, Plaintiff was examined at the Southern Bone and Joint Clinic. The doctor's notes reflect that he explained to Plaintiff that his injury was unstable, and was still too swollen for surgery at that time. The doctor recommended placing an ACE wrap and boot on Plaintiff's ankle and that he follow up with Dr. Nipper in one week. He was also prescribed Lortab, Phenobarbital, and Tegratol. Upon his return to SMCI, Plaintiff was scheduled for outpatient surgery at Forrest General Hospital on November 17, 2008. *See* Ex. B to Pl's Response [36-2] at 3-4; Ex. D to Motion [29-4] at 5.

Dr. Nipper performed outpatient surgery on Plaintiff's ankle on November 17, 2008, at Forrest General Hospital and upon his return to SMCI was given pain medication and antibiotics.

*Id.*; *see also* Ex. B to Pl's Response [36-2] at 1, 5.  Plaintiff continued to receive follow-up care for his ankle over the next several weeks.  *See* Ex. D to Motion [29]; Ex. B to Pl's Response [36-2] at 9.

In her declaration, Officer Jones states that she recalls Plaintiff being in the infirmary on October 29, 2008, and that Nurse Emma Breland was the nurse on duty.  She recalls Plaintiff refusing to see the nurse and yelling, "I want to see an emergency doctor."  She denies telling Plaintiff to leave the infirmary because he did not fill out a sick call request.  She recalls Nurse Breland telling Plaintiff to leave the infirmary because he refused medical treatment.  Officer Jones' sworn testimony reflects that she has never interfered with Plaintiff's medical treatment and has never witnessed anyone refuse Plaintiff medical treatment.  Finally, she states that she does not determine the method by which an inmate is taken to the infirmary, whether by sick call request or otherwise.  *See* Ex. A to Motion [29-1].

In his Response [36], Plaintiff disputes Officer Jones' declaration, including her statement that he refused treatment on October 29, 2008, and realleges the allegations made in his complaint.  However, Plaintiff has failed to show that Officer Jones was deliberately indifferent to his serious medical needs.  *See Davidson*, 91 F. App'x at 964.  There is simply no competent summary judgment evidence to support Plaintiff's allegation that Officer Jones interfered with or denied medical treatment for Plaintiff.  The medical records reflect that Plaintiff was seen in the infirmary the day of his fall and was provided with crutches and ibuprofen.  Plaintiff was subsequently provided additional medical care for his ankle, including surgery at an offsite hospital.  Even assuming Officer Jones did make Plaintiff leave the infirmary the day of his fall, Plaintiff has failed to allege much less establish any substantial harm resulting from the alleged delay caused by Officer Jones.  Indeed, after Plaintiff saw Dr. McCleave and an orthopaedic

surgeon two days after his fall, the surgery was scheduled for over two weeks later.  There is no evidence that Plaintiff required emergency surgery.  The medical records establish just the opposite.  *See Mendoza*, 989 F.2d at 195.

To the extent Plaintiff alleges claims against Officer Jones in her official capacity, which would in effect be a claim against SMCI or the MDOC, Plaintiff's claims fail as a matter of law.  As stated above, there is no respondeat superior liability under Section 1983.  *See supra*, *Oliver,* 276 F.3d at 742 & n.6.  Further, Plaintiff has failed to allege, much less demonstrate that SMCI or the MDOC implemented a policy, custom or practice that was the "moving force" behind the alleged constitutional violation.  *See Monell*, 436 U.S. at 694.

Based on the foregoing,  Plaintiff has failed to create a genuine issue of material fact as to whether Officer Jones was deliberately indifferent to his serious medical needs.  Accordingly, the undersigned concludes Officer Jones is entitled to judgment as a matter of law as to Plaintiff's medical claims, in both her individual and official capacities.

### **Cruel and Unusual Punishment/Retaliation**

Plaintiff alleges a claim against Defendant Don Lewis, a Captain at SMCI, for cruel and unusual punishment and retaliation.  Specifically, he claims that after he filed a grievance against Officer Jones, Captain Lewis' alleged girlfriend, through the Administrative Remedy Program ("ARP"), Captain Lewis started harassing him and would not let him walk in the handicap section in the dining hall despite his injured ankle, which caused him pain and suffering and mental anguish, and "may have" prolonged the healing process for his ankle.

The Eighth Amendment protects prisoners from cruel and unusual punishment and "requires prison officials to provide 'humane conditions of confinement,' ensuring that 'inmates receive adequate food, clothing, shelter, and medical care." *Palmer v. Johnson*, 193 F.3d 346,

351-52 (5th Cir. 1999) (quoting *Farmer v. Brennan*, 511 U.S. 825, 932 (1994)).  In order to demonstrate that a prison official violated the Eighth Amendment, the plaintiff must establish that he was deliberately indifferent to a substantial risk of serious harm.  *Lefall v. Johnson*, 48 F. App'x 104, 2002 WL 31017045, at *1 (5th Cir. Aug. 20, 2002) (citing *Palmer*, 193 F.3d at 351-52).  Deliberate indifference "is an extremely high standard to meet." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quoting *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)).  The test for establishing deliberate indifference is "one of subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  A prison official may not be held liable under this standard pursuant to Section 1983 unless the plaintiff alleges facts which, if true, would establish that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 838.

In his Response [36], Plaintiff states that "although there is no material evidence against Defendant Don Lewis, [he] has witnesses that can verify [his] allegations against the defendent (sic)." Response [36] at 5.  However, he fails to identify such witnesses.  Plaintiff's conclusory allegations fail to establish a claim against Captain Lewis for cruel and unusual punishment. *See Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).  Regarding the alleged harassment, "mere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations." *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983) (quoting *Coyle v. Hughes*, 436 F. Supp. 591, 593 (W.D. Okla. 1977)); *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997) (holding that "verbal abuse by a prison guard does not give rise to an action under § 1983").  Plaintiff has failed to show that Captain Lewis knew of and disregarded an excessive

9

risk to Plaintiff's health or safety by not allowing him to walk in the handicapped line in the dining hall.

Moreover, Plaintiff has failed to show that he is entitled to any damages for Captain Lewis' alleged conduct. Plaintiff seeks compensatory damages for emotional distress and pain and suffering, but has failed to show he was physically injured by Captain Lewis' conduct. Rather, he simply alleges that Captain Lewis' conduct "may have" prolonged the healing process for his ankle. *See Geiger v. Jowers*, 404 F.3d 371, 374-75 (5th Cir.2005) (holding that the Prison Litigation Reform Act, "Section 1997e(e)[,] applies to all federal civil actions in which a prisoner alleges a constitutional violation, making compensatory damages for mental or emotional injuries non-recoverable, absent physical injury").

To prevail on claim of retaliation, Plaintiff must establish "(1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his . . . exercise of that right, (3) a retaliatory adverse act, and (4) causation." *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998); *see also Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999). Plaintiff "must allege more than his personal belief that he is the victim of retaliation." *Jones*, 188 F.3d at 325. Mere conclusory allegations of retaliation are insufficient; Plaintiff must present either direct evidence of retaliatory motivation or "a chronology of events from which retaliatory motivation may be plausibly inferred." *Woods*, 60 F.3d at 1166 (internal citations and quotations omitted). To prove causation, Plaintiff must show that "but for the retaliatory motive the complained of incident . . . would not have occurred." *McDonald*, 132 F.3d at 231 (internal citations and quotations omitted).

Plaintiff has failed to establish Captain Lewis' intent to retaliate against him for filing the

ARP grievance against Officer Jones, Captain Lewis' alleged girlfriend.  Plaintiff has failed to present either direct evidence of retaliatory motivation by Captain Lewis or "a chronology of events from which retaliatory motivation may be plausibly inferred." *Woods*, 60 F.3d at 1166 (internal citations and quotations omitted).  Rather, Plaintiff has simply alleged his own personal belief that he was the victim of retaliation.  *Jones*, 188 F.3d at 325.

Plaintiff also asserts a claim against Defendant Isom O'Bonner, a correctional officer at SMCI, for cruel and unusual punishment.  Specifically, he claims that about a month after his surgery, Officer O'Bonner took his crutches from him, allegedly without any right to do so, and he had to set up an appointment to get another pair the next day.

In his declaration, Officer O'Bonner states that he never took Plaintiff's crutches from him in December 2008, or "caused unreasonable conditions for him at any time."  *See* Ex. B to Motion [29-2].  Even assuming Officer O'Bonner did take Plaintiff's crutches, Plaintiff has failed to show that Officer O'Bonner was deliberately indifferent– that he knew of and disregarded an excessive risk to Plaintiff's health or safety by not allowing him to use his crutches.[4]  Plaintiff testified that Officer O'Bonner simply took his crutches because he said Plaintiff didn't need them. Moreover, Plaintiff has failed to show how he was damaged by Officer O'Bonner's actions. Plaintiff testified that after Officer O'Bonner took his crutches, "he had to hop back up to the dining hall and get a nurse to issue me some more crutches."  *See Geiger*, 404 F.3d at 374-75.

Plaintiff alleges a claim against Defendant Regina Hancock, the assistant Warden at

---

[4]Plaintiff attaches a sick call request dated January 31, 2009, to his Response [36] stating that he has been having serious aches and pains in his ankle since his crutches were taken away. *See* Response [36-3] at 1. However, this sick call request is dated over a month after Officer O'Bonner allegedly took his crutches away and does not establish that Officer O'Bonner was the one who took his crutches.  Nevertheless, even assuming Officer O'Bonner did take Plaintiff's crutches, Plaintiff has failed to establish a constitutional violation as set forth herein.

11

SMCI, for cruel and unusual punishment.  Specifically, he claims that Warden Hancock violated his constitutional rights by failing to remedy unlawful conditions after he mailed her numerous letters complaining about the above officers and how they were treating him.

In her declaration, Warden Hancock states that the only correspondence she received from Plaintiff was through the ARP (SMCI-08-1809 and SMCI-09-746)[5] and two letters mailed to Superintendent Ron King, which were forwarded to her.  The first letter, dated December 1, 2008, regarding the alleged denial of medical treatment for his ankle was forwarded to the Site Medical Administrator as a medical referral.  Warden Hancock further discussed Plaintiff's concerns with Officer Jones, who advised Warden Hancock that Plaintiff was seen by Nurse Breland and was offered assistance until the doctor could see him but he refused.  *See* Ex. C to Motion [29-3] and Attachment [38].[6]

In the second letter dated May 17, 2009, Plaintiff was complaining about the staff harassing him.  Warden Hancock spoke with the staff that was allegedly harassing Plaintiff (Jones, Lewis and O'Bonner) and they denied harassing Plaintiff or taking his crutches.  She

---

[5]ARP grievance SMCI-08-1809 dealt with Plaintiff's claims that Officer Jones denied him adequate medical treatment for his ankle.  *See* Complaint [1-2].  From the record, the subject matter of ARP grievance SMCI-09-746 is unclear.  However, any allegation that Warden Hancock failed to adequately investigate his grievances simply does not give rise to a constitutional claim.  *See Dehghani v. Vogelgesang*, 226 F. App'x 404, 406 (5th Cir. 2007); *Charles v. Nance*, 186 Fed. App'x 494, 495 (5th Cir. 2006); *Woodland v. City of Vicksburg*, No. 5:05cv85-DCB-JCS, 2006 WL 3375256, at *3 (S.D. Miss. Nov. 21, 2006) (stating that claim for "failure to investigate" did not amount to a constitutional violation).  Moreover, Plaintiff has no constitutional right to a grievance procedure, and has no due process liberty interest right to having his grievance resolved to his satisfaction.  *See Geiger v. Jowers*, 404 F.3d 371, 374-75 (5th Cir. 2005); *Jones v. Shabazz*, No. H-06-1119, 2007 WL 2873042, at *21 (E.D. Tex. Sept. 28, 2007).

[6]Plaintiff attaches a letter to his Response [36] dated December 1, 2008, which appears to be the first page of a hand-written copy of the letter attached to Warden Hancock's declaration, although the letter is not a verbatim copy.  *See* Ex. D to Response [36-4] at 1.

reminded them to conduct themselves in a professional manner and follow policy and procedure. Warden Hancock's declaration reflects that she spoke with Plaintiff regarding the above complaints and he seemed satisfied with the results. This is the only interaction she has had with Plaintiff. *Id.*

Based on the evidence before the court, Plaintiff has failed to show that Warden Hancock was deliberately indifferent– that she knew of and disregarded an excessive risk to Plaintiff's health or safety. The record reflects that Warden Hancock did take action in response to Plaintiff's complaints. The fact that Warden Hancock's actions did not achieve the "remedy" Plaintiff desired does not amount to a constitutional violation. Moreover, as stated above, there is no respondeat superior or vicarious liability under Section 1983. *See supra*, *Oliver,* 276 F.3d at 742 & n.6*; Thompkins*, 828 F.2d at 304. Thus, Warden Hancock cannot be held liable for the alleged improper conduct of her subordinates.

To the extent Plaintiff alleges claims against Captain Lewis, Officer O'Bonner and/or Warden Hancock in their official capacities, which would in effect be a claim against SMCI or the MDOC, Plaintiff's claims fail as a matter of law. As stated above, there is no respondeat superior liability under Section 1983. *See supra*, *Oliver,* 276 F.3d at 742 & n.6. Further, Plaintiff has failed to allege, much less demonstrate that SMCI or the MDOC implemented a policy, custom or practice that was the "moving force" behind the alleged constitutional violations. *See Monell*, 436 U.S. at 694.

Based on the foregoing, Plaintiff has failed to create a genuine issue of material fact as to whether Captain Lewis, Officer O'Bonner, or Warden Hancock violated his constitutional rights. Accordingly, the undersigned concludes that Captain Lewis, Officer O'Bonner, and Warden Hancock are entitled to judgment as a matter of law as to Plaintiff's claims for retaliation and

cruel and unusual punishment, in both their individual and official capacities.

### **Failure to Train/Supervise**

Finally, Plaintiff arguably alleges a claim against Defendant Regina Hancock for failure to train and/or supervise. Specifically, he claims that Warden Hancock violated his constitutional rights by failing to remedy unlawful conditions after he mailed her numerous letters complaining about the above officers and how they were treating him.

Plaintiff does not allege that Warden Hancock was present for or personally involved in the alleged constitutional violations described above. Rather, it appears that Plaintiff is seeking to hold Warden Hancock liable for the alleged violations as a result of inadequate supervision. As previously stated, there is no respondeat superior liability under Section 1983. *See supra*, *Oliver,* 276 F.3d at 742 & n.6*; Thompkins*, 828 F.2d at 304. In order for a supervisory official to be held liable under Section 1983, Plaintiff must establish: 1) that the official failed to train or supervise the officers involved; 2) that there is a causal connection between the alleged failure to supervise or train and the alleged violation of his rights; and 3) the failure to train or supervise constituted deliberate indifference to his constitutional rights. *See Thompson v. Upshur County, TX*, 245 F.3d 447, 459 (5th Cir. 2001); *Brown v. Callahan*, --- F.3d ----, 2010 WL 3912361, at *3 (5th Cir. Oct. 7, 2010). Moreover, a single instance of the lack of training or supervision is usually insufficient to establish deliberate indifference. *Thompson*, 245 F.3d at 459.

Plaintiff has failed to meet any of the elements stated above. There is no evidence that Warden Hancock failed to adequately supervise Captain Lewis, Officer O'Bonner, or Officer Jones, much less that she was deliberately indifferent in her failure to do so. *See Brown*, 2010 WL 3912361, at *4 (stating that neither negligence nor gross negligence in failing to train or supervise constitutes deliberate indifference). Moreover, as discussed above, Plaintiff has failed

to establish an underlying constitutional violation by Warden Hancock's subordinates.

To the extent Plaintiff alleges a claim against Warden Hancock in her official capacity, which would in effect be a claim against SMCI or the MDOC, Plaintiff's claim fails as a matter of law. Plaintiff has failed to allege, much less demonstrate that SMCI or the MDOC implemented a policy, custom or practice that was the "moving force" behind the alleged constitutional violations. *See Monell*, 436 U.S. at 694.

Based on the foregoing, Warden Hancock is entitled to judgment as a matter of law as to Plaintiff's claim for failure to train and/or supervise, in both her individual and official capacities.

### Qualified Immunity

Although Defendants have raised the defense of qualified immunity, "if it becomes evident that the plaintiff has failed to state or otherwise to establish a claim, then the defendant is entitled to dismissal on that basis." *Wells v. Bonner*, 45 F.3d 90, 93 (5th Cir. 1993) (citing *Siegert v. Gilley*, 500 U.S. 226, 231-33 (1991)); *see also Sappington v. Bartee,* 195 F.3d 234, 236 (5th Cir. 1999). Because the court finds that the Plaintiff's claims are not cognizable as constitutional claims, it declines to address the issue of whether the Defendants are entitled to qualified immunity. *Wells*, 45 F.3d at 93.

CONCLUSION

For the reasons stated above, the court finds that Defendants' Motion for Summary Judgment [29] should be granted. Accordingly,

IT IS, THEREFORE, ORDERED:

1.   That the Defendants' Motion for Summary Judgment [29] is GRANTED and that this action is dismissed with prejudice.

2.   A separate judgment will be filed herein in accordance with Federal Rule of Civil

Procedure 58.

SO ORDERED this the 26th day of October, 2010.

s/ Michael T. Parker
United States Magistrate Judge